IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 4:18CR717 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | |
| DARYL EVANS, | ) | <u>GOVERNMENT'S TRIAL BRIEF</u> |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, by and through its undersigned counsel, hereby submitting its trial brief.  In addition to summarizing the charges and evidence, the Government briefs the following evidentiary and legal issues:  (1) the December 2015 consensual recording made by Maurice Evans of David White is admissible as a coconspirator statement, or alternatively, as a prior consistent statement if the Defendant impeaches White's testimony; and (2) although the houses were vacant at the time of the fires, both 1628 Hamilton and 267 Parkman satisfy § 844(i)'s interstate nexus element because the Defendant had rented them in the past and intended to re-rent them in the future

## I.  <u>CHARGES</u>

Count 1: Conspiracy to Commit Mail Fraud (18 U.S.C. § 1349)

Count 2: Mail Fraud (18 U.S.C. § 1341)

Count 3: Use of Fire in Commission of a Felony (18 U.S.C. § 844(h)(1))

Count 4: Destroying or Damaging Property Used in Interstate Commerce (18 U.S.C. § 844(i))

Count 5: Conspiracy to Commit Mail Fraud (18 U.S.C. § 1349)

Count 6: Mail Fraud (18 U.S.C. § 1341)

Count 7: Use of Fire in Commission of a Felony (18 U.S.C. § 844(h)(1))

Count 8: Destroying or Damaging Property Used in Interstate Commerce (18 U.S.C. § 844(i))

## II.  SUMMARY OF GOVERNMENT'S CASE

### A.  1628 Hamilton – August 2013 Fire

The Defendant purchased 1628 Hamilton, a single-family residential house in Warren, Ohio, in 2011 from Phillip McNeal.  The Defendant allowed to McNeal to continue living in the house as a tenant until March of 2014 for $400 per month.  The Defendant obtained an insurance policy on the house in 2012 from State Farm.

In August of 2013, McNeal fell ill and was admitted to the hospital.  The Defendant then asked his brother and codefendant, Maurice Evans, to burn down 1628 Hamilton so that he could obtain an insurance payout.  Maurice Evans agreed and hired a drug addict named Donald Jones to set the fire.  Jones set the fire on August 19, 2013.  The Warren Fire Department responded and extinguished the fire, which only damaged the second floor bedrooms and bathroom. Maurice Evans met Jones at a bar afterward and paid him in drugs and cash.

After the fire, the Defendant submitted an insurance claim to State Farm.  State Farm hired Bures Consultants, a professional fire investigation company owned by Genevieve and Robert Bures, to inspect the house and investigate the fire.  Genevieve Bures visited 1628 Hamilton the day after the fire to conduct an inspection.  She concluded that someone had intentionally set two separate fires in the upstairs of the house.  Despite the fire being ruled an arson, State Farm paid the Defendant's claim because they had no evidence he was involved in the fire.  State Farm mailed the Defendant a check for the damage to the house and the lost rent. State Farm also mailed a $6,000 check to the City of Warren to be held in escrow until the Defendant repaired the house.

The Defendant subsequently repaired the house, collected the $6,000 in escrow from the City of Warren, and allowed McNeal to move back in around late 2013 once he was released from the hospital.

B.   **1628 Hamilton – April 2014 Fire**

In late March or early April of 2014, McNeal permanently moved out of the house and stopped paying rent.  The Defendant then asked Maurice Evans if he would set another fire to the house.  Maurice Evans agreed.  On April 14, 2014, Maurice Evans personally set fire to 1628 Hamilton using gasoline.  The Warren Fire Department again responded and extinguished the fire.  The Defendant again submitted an insurance claim to State Farm.  State Farm rehired Genevieve Bures to inspect the house and investigate the fire.  After inspecting the property, Genevieve Bures concluded that someone had intentionally set four separate fires inside the house using an ignitable substance.  State Farm again paid the Defendant's claim by mailing him a check because they had no evidence to prove that he was involved in the arson.

C.   **267 Parkman – January 2015 Fire**

The Defendant purchased 267 Parkman Road, another single-family house in Warren, in January of 2014.  He obtained an insurance policy on the house through State Farm.  Beginning around March of 2014, he rented 267 Parkman to Honeya Price for $500 per month.  Price moved out of the house in October 2014 after the Defendant evicted her for not paying rent.  The Defendant then asked Maurice Evans if he would set fire to 267 Parkman so that they could collect another insurance payout.  Maurice Evans declined the offer, thinking that a third fire within a year-and-a-half would be too risky.

So the Defendant asked David White, a long-time associate, if he would set fire to 267 Parkman.  White agreed, and on January 4, 2015, lit a fire inside the house using gasoline.  The Warren Fire Department responded to extinguish the fire, however the fire had completely

destroyed the roof.  The Defendant submitted another claim to State Farm, who again commissioned Bures Consultants to investigate the fire.  This time, Robert Bures (Genevieve Bures's son) conducted the inspection.  Robert Bures concluded that the fire had been intentionally set by pouring an ignitable substance onto the attic staircase.  State Farm conducted their own investigation, which included deposing the Defendant.  But in December of 2015, they decided to pay the Defendant's claim after finding insufficient evidence to prove that he was involved with the arson.

> D. **Consensual recordings**

In 2015, the FBI began investigating the case and eventually approached Maurice Evans. Maurice Evans admitted to his involvement and agreed to record his conversations with the Defendant and White.  The Government intends to offer three such recordings: an October 21, 2015 recording of the Defendant (Gov. Exhibit 1), a December 18, 2015 recording of White (Gov. Exhibit 2), and a January 5, 2016 recording of the Defendant (Gov. Exhibit 3).

> E. **Historic Cell Site Data for David White**

As part of the investigation, the FBI obtained White's cell phone records from Sprint. FBI Special Agent Jacob Kunkle, a member of the FBI's CAST team (Cellular Analysis Survey Team), reviewed the records and determined that White's cell phone was present and active near 267 Parkman around the time of January 5, 2014 fire.

## III.  **LEGAL AND EVIDENTIARY ISSUES**

> A. **The December 2015 consensual recording made by Maurice Evans of David White is admissible as a coconspirator statement, or alternatively, as a prior consistent statement if the Defendant impeaches White's testimony.**

On December 18, 2015, Maurice Evans met with White and recorded their conversation using a recorder provided by the FBI.  During the meeting, White and Maurice Evans discussed the following topics: (1) how they could burn down other houses for insurance money and how

4

much White would charge for setting those fires, (2) Maurice Evans reassuring White about the Defendant not yet paying White for the 267 Parkman arson, and (3) whether the Defendant would be able to continue concealing the arson scheme from the insurance company.  At this point in the case, the FBI had not yet approached White about cooperating.  This recorded conversation is marked as Government's Exhibit 2.

> 1.  **White's conversation with Maurice Evans is admissible as a coconspirator statement, because White made the statements in furtherance of a conspiracy to burn down houses for Daryl Evans.**

Federal Rule of Evidence 801(d)(2)(E) provides that an out-of-court statement is not hearsay if "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).  The proponent must show by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant against whom the statement is offered was a member of the conspiracy; and (3) the statement was made during and in furtherance of the conspiracy. *United States v. Enright*, 579 F.2d 980, 986 (6th Cir. 1978).  The court may consider the underlying statements themselves in determining whether they meet the elements of this hearsay exception. *Bourjilay v. United States*, 483 U.S. 171 (1987).  Importantly, this hearsay exception does not depend on whether the government specifically charged the conspiracy or the involved coconspirators. *See United States Franklin*, 415 F.3d 537 (6th Cir. 2005).  Nor does the fact that the statement was recorded by a person cooperating with law enforcement have any effect on the statement's admissibility under this rule, provided that the statement satisfies the above three elements. *See United States v. Wright*, 343 F.3d 849, 866–67 (6th Cir. 2003)

As to the third element, a statement was made in furtherance of the conspiracy if it was intended to promote the objectives of the conspiracy. *United States v. Monus*, 128 F.3d 376, 392 (6th Cir. 1997).  Coconspirator statements can take many forms and be susceptible to many interpretations. *See United States v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000).  Indeed, there is

no requirement that the coconspirator's statement be "exclusively, or even primarily, made to further the conspiracy."  *See id.* (quoting *United States v. Doerr*, 886 F.2d 944, 951–52 (7th Cir. 1989)).

The Sixth Circuit has held that the following types of statements qualify as being in made furtherance of the conspiracy: statements that keep coconspirators apprised of others' activities, *see United States v. Kelsor*, 665 F.3d 684, 694 (6th Cir. 2011), statements that allay the fears of other coconspirators, *see Monus*, 128 F.3d at 392–93, statements that "prompt a listener to act in a manner that facilitates the carrying out of the conspiracy," *see United States v. Jerkins*, 871 F.2d 598, 606 (6th Cir. 1989), conversations designed to collect money, *see United States v. Hamilton*, 689 F.2d 1262, 1270 (6th Cir. 1982), statements made to potential recruits to solicit their participation, *see United States v. Holloway*, 740 F.2d 1373, 1376 (6th Cir. 1984), and statements that "identify participants and their roles in the conspiracy," *United States v. Clark*, 18 F.3d 1337, 1342 (6th Cir. 1994).

Here, as in the cases cited above, the statements made by White to Maurice Evans were in furtherance of a conspiracy to burn down houses in the Warren area for insurance money, of which both White and the Defendant were members.  As to the first and second elements, a conspiracy to burn down houses existed and the Defendant was a member of that conspiracy. Both White and Maurice Evans will testify that the Defendant hired them to burn down houses he owned in Warren for insurance money.  Moreover, the Defendant had not yet finished paying White for the 267 Parkman fire when Maurice Evans recorded this statement in December 2015. Thus, both the first and second elements are met.

As to the third element, White's statements were made in furtherance of that conspiracy. During their December 2015 meeting, White and Maurice Evans discussed how they could burn

down other houses for money, and how much White would charge for setting those fires. (*White*: "I only charge a grand and under.").  White expressed concern to Maurice Evans about the Defendant not yet paying him for the 267 Parkman fire, and Maurice Evans reassured White that he would get paid.  (*White*: "[The Defendant] be payin' me bits and pieces.  He ain't come clean with me."  *Maurice*: "Oh, he'll probably look out for you once he get his [insurance] money.").  They also discussed whether the Defendant would be able to keep the arson scheme a secret, given the number of insurance claims he had made.  (*Maurice*: "See Daryl ain't gonna tell nothin'."  *White*: "I know he ain't gonna tell nothing but I'm saying.  They [the insurance company] like, shiiiit.  We done paid you a half of million dollars within the last five years."  . . . *Maurice*: "Daryl keep a secret then.").  And finally, the fact that Maurice Evans was cooperating with law enforcement at the time he recorded this conversation does not have any effect on the admissibility of White's statements, given that they meet the three elements for this hearsay exception.  *See Wright*, 343 F.3d at 866–67.  Thus, White's statements to Maurice Evans from the December 18, 2015 recording are admissible as coconspirator statements.[1]

> 2.  **Alternatively, White's statements to Maurice Evans would be admissible as a prior consistent statement under FRE 801(d)(1)(B) to rehabilitate White if his testimony is impeached.**

Federal Rule of Evidence 801(d)(1)(B) allows a party to introduce a declarant-witness's prior consistent statement to rebut a charge of fabrication, or to rehabilitate their credibility on other grounds:

---

[1] The Government notes that it provided an exhibit list to the Defendant on March 1, 2019, pursuant to the Court's order.  The December 2015 recording of White was included on that exhibit list.  To date, defense counsel has not communicated any objection to the Government about admitting this recording at trial.

**(d) Statements That Are Not Hearsay**.  A statement that meets the following conditions is not hearsay:

> **(1) A Declarant-Witness's Prior Statement**.  The declarant testifies at the trial and is subject to cross-examination about a prior statement, and the statement, and the statement:
>
> * * * * *
>
> **(B)** is consistent with the declarant's testimony and is offered:
>
>> **(i)** to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or
>>
>> **(ii)** to rehabilitate the declarant's credibility as a witness when attacked on another ground;

Fed. R. Evid. 801(d)(1)(B).  Prior to 2014, a prior consistent statement could only be admitted for the truth of the matter asserted to rebut a charge of recent fabrication, and must have been made before the declarant-witness developed the motive to fabricate their testimony.  *United States v. Cox*, 871 F.3d 479, 487 (6th Cir. 2017); *United States v. Tome*, 513 U.S. 150 (1995).  "However, in 2014, subparagraph (B) was split into two clauses, including the new clause (ii), which allows prior consistent statements to be admitted for the truth of the matter asserted if offered 'to rehabilitate the declarant's credibility as a witness when attacked on another ground.'" *Cox*, 871 F.3d at 487 (quoting Fed. R. Evid. 801(d)(1)(B)(ii)).  The Rules Committee explained that the 2014 amendment did not affect the holding of *Tome* as applied to statements offered to rebut a charge of recent fabrication, but that "the intent of the amendment is to extend substantive effect to consistent statements that rebut other attacks on a witness – such as the charges of inconsistency or faulty memory."  Fed. R. Evid 801 (Advisory Committee's Note to 2014 Amendment).

Applied here, White's statements to Maurice Evans would be admissible to rehabilitate White's credibility if defense counsel attacks White based on bias, memory, or inconsistency.  If defense counsel impeaches White's credibility because he is testifying pursuant to a plea agreement, then White's prior statement would be admissible "to rebut an express or implied charge that [White] recently fabricated [his testimony]."  *See* Fed. R. Evid. 801(d)(1)(B)(i). White's statement also complies with *Tome's* time restraints, since White made it before the FBI ever approached him about cooperating.  White's statement would also be admissible under subsection (B)(ii) if defense counsel raises "charges of inconsistency or faulty memory" about his testimony.  *See* Fed. R. Evid. 801(d)(1)(B)(ii).  Thus, regardless of whether the conversation between White and Maurice Evans is admissible under the coconspirator statement exception, it is admissible as a prior consistent statement if defense counsel attacks White's credibility.

> **B.**   **Although they were vacant at the time of the fires, both 1628 Hamilton and 267 Parkman satisfy § 844(i)'s interstate nexus element because the Defendant had rented those houses in the past and intended to re-rent them in the future.**

18 U.S.C. §844(i) provides that:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce [shall be fined and imprisoned in accordance with the statute.]

18 U.S.C. § 844(i).  In *Russel v. United States*, 471 U.S. 858 (1985), the Supreme Court held that the rental of residential property is an activity affecting interstate commerce, and that destruction of residential rental property therefore qualifies under § 844(i).  *Id.* at 862.  In *United States v. Turner*, 995 F.2d 1357 (6th Cir. 1993), a case involving the arson of a temporarily vacant rental property, the Sixth Circuit held that "property routinely used in interstate commerce activity does not lose its interstate characteristics because of a temporary cessation of that activity[.]"  *Id.* at

1362.  The Court explained that the temporary vacancy of the rental property in that case did not sever the property's connection to interstate commerce, because:

> [t]estimony and evidence presented in this case proved that the residence in question had been a rental property from the date of its purchase to the date of its destruction by fire, and that the owner had intended to repair the property and place it on the rental market after Turner and his girlfriend had vacated the premises. These facts were sufficient to support a link to interstate commerce, notwithstanding the vacancy of the building at the time of the arson.

*Id.*

Here, although both of the Defendant's rental properties were vacant at the time of the arsons, they nonetheless had a sufficient connection to interstate commerce because the Defendant previously used them as rental properties and intended to re-rent them in the future. At the time of the April 2014 fire, the Defendant had been using 1628 Hamilton as a rental property for a continuous period of nearly three years.  His tenant, Phillip McNeal, had only moved out of that house one month before the April 2014 fire.  Moreover, the Defendant's insurance policy on 1628 Hamilton at the time of the April 2014 fire was a rental policy, not a homeowner's policy.  As to 267 Parkman, the Defendant purchased that house in January 2014 and rented it to Honeya Price from March 2014 to October 2014.  During a June 2015 deposition with State Farm about the fires, he stated that he had been actively pursuing tenants after Price moved out in October 2014.  He also stated that he owns a third rental house in Warren, which corroborates the fact that he was in the business of renting properties.  In short, there will be sufficient evidence to show that both houses meet the interstate nexus element of 18 U.S.C. § 844(i).

## CONCLUSION

The Government respectfully submits this trial brief for the Court's consideration, and asks that the Court consider and address the legal issues raised above.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:   /s/ James P. Lewis
      James P. Lewis (MD: 1412170148)
      Assistant United States Attorney
      United States Court House
      801 West Superior Avenue, Suite 400
      Cleveland, OH 44113
      (216) 622-3958
      (216) 522-8355 (facsimile)
      James.Lewis@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of April 2019, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ James P. Lewis
James P. Lewis
Assistant U.S. Attorney